IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JOY MELISSA NEUMEIER                                    PLAINTIFF

V.                            NO. 09-5269

MICHAEL ASTRUE,
Commissioner of Social Security Administration          DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Joy Melissa Neumeier, brings this action pursuant to 42 U.S.C. § 405(g),

seeking judicial review of a decision of the Commissioner of the Social Security Administration

(Commissioner) denying her claim for a period of disability and disability insurance benefits

(DIB) under the provisions of Title II of the Social Security Act (Act).  In this judicial review,

the Court must determine whether there is substantial evidence in the administrative record to

support the Commissioner's decision.  See 42 U.S.C. § 405(g).

## I. Procedural Background:

Plaintiff filed her current application for DIB on July 18, 2007, alleging an inability to

work since December 15, 2005, due to Attention-Deficit/Hyperactivity Disorder (ADHD),

hepatitis C, porphyria cutanea tarda (PCT),[1] depression, anxiety disorder, and allergies. (Tr. 102,

144).  For DIB purposes, Plaintiff maintained insured status through December 31, 2010.  (Tr.

60).  An administrative hearing was held on February 24, 2009, at which Plaintiff appeared with

---

[1]Porphyria - Any of a group of disturbances of porphyrin metabolism, characterized biochemically by marked increase in formation and excretion of porphyrins or their precursors and clinically by various neurologic and cutaneous manifestations.  The types are generally classified as hepatic, erythropoietic, and sometimes erythrohepatic, depending on the location of expression of the biochemical defect.
Cutanea tarda (PCT)  - The most common form of porphyria, characterized by cutaneous photosensitivity that causes scarring bullae, hyperpigmentation, facial hypertrichosis, and sometimes sclerodermatous thickenings and alopecia; it is frequently associated with alcohol abuse, liver disease, or hepatic siderosis....  Dorland's Illustrated Medical Dictionary 1519 (31ˢᵗ ed. 2007).

AO72A
(Rev. 8/82)

counsel, and she and her husband testified.  (Tr. 17-52).

By written decision dated June 9, 2009, the ALJ found that Plaintiff had an impairment or combination of impairments that were severe - hepatitis C, anxiety, and ADHD. (Tr. 60). However, after reviewing all of the evidence presented, she determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4.  (Tr. 61).  The ALJ found that Plaintiff retained the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 404.1567(b) with the following additional functional limitations.  She can do work which required no more than routine, but superficial interpersonal interaction, i.e., grocery checker; she cannot perform work requiring telephone usage.  She should have no more than moderate exposure to sunlight, fumes, odors, dust, gases, pesticides, herbicides, and other toxic chemicals, and she cannot tolerate exposure to loud background noises.

(Tr. 62).[2]  With the help of a vocational expert (VE), the ALJ determined that Plaintiff could perform other work, such as deli cutter, presser, and sewing machine operator.  (Tr. 65).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on October 23, 2009.  (Tr. 1-3).  Subsequently, Plaintiff filed this action. (Doc. 1).  This case is before the undersigned pursuant to the consent of the parties.  (Doc. 7). Both parties have filed briefs and this case is now ready for decision.  (Docs. 11,12).

## II.    Evidence Presented:

Plaintiff was born in 1965, graduated from high school and completed one year of

---

[2]Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.  20 C.F.R. § 404.1567(b).

AO72A
(Rev. 8/82)

college.  (Tr. 21, 102).  Plaintiff's past work consists of work as a teaching assistant, landscaper, and care giver.  (Tr. 134).

The medical records reflect that in 1998, Plaintiff was diagnosed with ADHD, and was prescribed Adderall.  (Tr. 372-373).  She reported on December 9, 1998, that she was doing well, and could tell a big difference in her concentration and attention, and her focus was much better.

The next recorded physician visit by Plaintiff was on February 22, 2007, when Plaintiff saw Randy Conover, D.O., with multiple complaints - abdominal discomfort when she bent over or lifted something; increased weight gain;  generalized fatigue; and repetitive scarring of the hands. (Tr. 217, 359).  Dr. Conover diagnosed Plaintiff with fatigue, weight gain, and dermatitis. (Tr. 217, 359).    Plaintiff was seen by Dr. Stephen Stagg of the Northwest Arkansas Gastroenterology Clinic, by referral, on February 28, 2007.  His assessment was that Plaintiff had chronic hepatitis C; PCT, and anxiety disorder.  (Tr. 330).  He recommended that Plaintiff's anxiety disorder be treated with Lexapro, that she be vaccinated for hepatitis A and B, and for her to have an eye exam.  (Tr. 330).

On March 2, 2007, an abdominal ultrasound was performed on Plaintiff and the impression was "diffuse hepatocellular disease suspected."[3]  (Tr. 423).

On March 12, 2007, Plaintiff was seen by Dr. K. L. Ubben at Ubben Dermatology Clinic, P.A. (Tr. 193).  His assessment was to rule out PCT.  (Tr. 193).  On April 3, 2007, Dr. Ubben gave Plaintiff a lab slip for a phlebotomy (procedure used to remove blood from a person), and Dr. Stagg's recommended Interferon treatment for Plaintiff's hepatitis C was postponed per Dr.

---

[3]Hepatocellular- Pertaining to or affecting hepatic cells.
 Hepatic - pertaining to the liver - Dorland's Illustrated Medical Dictionary.  855, 857 (31st ed. 2007).

Stagg. (Tr. 193). Also on April 3, 2007, Dr. Stagg assessed Plaintiff as follows:

1. Chronic hepatitis C - geneotype I
2. PCT - stable
3. Mild insomnia - ? secondary to Lexapro
4. Anxiety - stable

(Tr. 419). On April 12, 2007, in the personal history and physical exam report, Dr. Stagg

reported that because of her anxiety, Plaintiff was started on Lexapro, 10 mg. daily, and had

"done quite well with that. Her anxiety is well controlled." Further, Plaintiff denied significant

depression. (Tr. 222). Dr. Stagg noted in her past medical history that seven years previously,

Plaintiff was treated by Dr. Tate for possible attention deficit disorder with Adderall, but that

Plaintiff stated she did not like being treated with such medication. (Tr. 222). She also denied

clinical depression, but did state she had anxiety. Dr. Stagg reported that Plaintiff did not smoke

cigarettes and had eight or nine beers on the weekend. (Tr. 223). His impression at that time

was:

1. Chronic hepatitis C genotype 1A;
2. Iron overload
3. Porphyria cutanea tarda
4. Anxiety disorder, controlled.

(Tr. 223). In the progress notes dated April 12, 2007, Plaintiff reported to Dr. Stagg that she had

some mild anxiety, but that it was controlled with Lexapro, and that she thought Dr. Conover had

done a good job with managing her anxiety, and that she was really stable in that regard. (Tr.

225). She denied significant depression or any clinical depression and stated that she was quite

happy with Dr. Conover's excellent care of her anxiety issues. (Tr. 225). At that time, Dr. Stagg

performed an ultrasound guided percutaneous liver biopsy successfully. (Tr. 228). In a report

dated April 17, 2007, Dr. Stagg stated that the liver biopsy showed mild hepatitis and no

scarring.  (Tr. 328).

On April 30, 2007, at a two week follow-up after the liver biopsy, Dr. Stagg reported that plaintiff was to receive her third phlebotomy, that she was receiving hepatitis A and B vaccines, that her PCT was better, and that the Lexapro was increased to 20 mg., per Dr. Conover.  (Tr. 321).  His assessment was:

1. Chronic hepatitis C
2. PCT - better;
3. Increased serum levels;
4. Anxiety/stress - stable

(Tr. 322).

On May 15, 2007, after having three treatments of phlebotomy, Plaintiff saw Dr. Ubben, as her face was broken out and water blisters had erupted on her hands.  (Tr. 194).  On June 28, 2007, Dr. Ubben reported that Plaintiff was "doing better," and that she was using Ziana gel only on her face.  (Tr. 195).

On August 6, 2007, Plaintiff was seen by Dr. Stagg, who noted that Plaintiff's PCT was about gone and that Plaintiff was being vaccinated for hepatitis A and B.  (Tr. 327).  He reported that Plaintiff had no depression and no anxiety and that she felt well.  (Tr. 327).  At that time, the only medication Plaintiff was taking was Lexapro for her depression.  (Tr. 327).  On that same date, Plaintiff filled out a form entitled BDI-II, indicating she was not feeling sad, was not discouraged about her future, did not feel like a failure, did not feel particularly guilty, did not feel she was being punished, felt the same about herself as ever, did not criticize or blame herself more than usual, did not have thoughts of killing herself, and did not cry any more than she used to.  She did report that she did not enjoy things as much as she used to.  (Tr. 396-397).

-5-

In a letter dated August 7, 2007, Dr. Ubben advised Plaintiff that her iron stores had depleted down to a desirable level and that there would not be further phlebotomy treatments. (Tr. 320).  In another letter dated August 15, 2007 from Dr. Ubben to the Social Security Administration, he advised that Plaintiff was treated with phlebotomies until her serum ferritin level dropped, and that she failed to keep her last appointment of August 9, 2007. (Tr. 215).  He further stated:

> In regard to her ability to do work activities, I can only speak regarding her skin. She should not be exposed to sunlight or toxic chemicals.  Other than that I have no work restrictions related to her cutaneous findings.

(Tr. 215).

On August 22, 2007, Plaintiff visited Dr. Conover and reported that she recently had an altercation with the police, who had her wrists bound by zippy ties. (Tr. 358).  She had abrasions to her left wrist.  She was also complaining of eye discomfort after the use of Mace.  She was treated for conjunctivitis and cellulitis.  (Tr. 358).

On September 15, 2007, a Physical RFC Assessment was completed by David L. Hicks. He found that Plaintiff could:

> occasionally lift and/or carry (including upward pulling) 20 pounds;  frequently lift and/or carry (including upward pulling) 10 pounds;  stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday;  sit (with normal breaks) for a total of about 6 hours in an 8-hour workday;  push and/or pull (including operation of hand and/or foot controls) unlimited, other than as shown for lift and/or carry.

(Tr. 237).  Dr. Hicks found that no postural, manipulative, visual or communicative limitations were established, and that Plaintiff must avoid even moderate exposure to extreme heat, fumes, odors, dusts, gases, and poor ventilation.  (Tr. 238-240).  He also stated that she should avoid sunlight and toxic chemicals.  He recommended an RFC of light work with avoidance of sunlight

-6-

and toxic chemicals.  (Tr. 243).

On October 26, 2007, Plaintiff presented herself to Northwest Medical Center of Bentonville, complaining of chest pain and shortness of breath.  (Tr. 273).  At that time, she was taking Lexapro 20 mg., Albuterol on an as-needed basis, and Rozerem as needed.  She reported smoking a half pack of cigarettes a day and drinking alcohol on the week-ends.  (Tr. 273).  The overall impression was chest pain, history of hepatitis C, PCP,[4] and anxiety disorder.  (Tr. 276).  X-rays of her chest revealed no acute cardiopulmonary disease.  (Tr. 304).

On October 29, 2007, a Mental Diagnostic Evaluation was conducted for the Social Security administration by Jeanne H. Curtis, Psy.D.  (Tr. 244-248).  Dr. Curtis reported that Plaintiff needed no assistance with activities of daily living.  (Tr. 245).  She felt that Plaintiff's primary symptoms met the criteria for Major Depression, Recurrent, Severe, without Psychotic Features.  (Tr. 246).  She further found that the other aspect of her mental and emotional difficulty met the criteria for ADHD, NOS.[5]  However, she stated that with too few symptoms for the specific ADHD diagnosis, there was sufficient evidence of a problem since childhood to warrant NOS.  (Tr. 246).  Dr. Curtis diagnosed Plaintiff with:

| | |
|---|---|
| Axis I: | Major Depressive Disorder, Recurrent, Severe Without Psychotic Features |
| | Attention Deficit Disorder NOS |
| Axis II: | 799.9 (Deferred) |
| Axis V: | GAF - 50-60 |

(Tr. 247).  She found that plaintiff did her own shopping, handled her personal finances with her

---

[4]The Court is uncertain of what the doctor intended by use of this acronym, since it is an acronym for several conditions.  In this context, the physician may have been referring to pneumocystic carinii pneumonia.

[5]314.9 -Attention-Deficit/Hyperactivity Disorder Not Otherwise Specified -This category is for disorders with prominent symptoms of inattention or hyperactivity-impulsivity that do not meet criteria for Attention-Deficit/Hyperactivity Disorder.  Diagnostic and Statistical Manual of Mental Disorders, 93 (4th ed. 2000).

AO72A
(Rev. 8/82)

husband's help, did not participate in any social groups, and was generally capable of performing activities of daily living autonomously. (Tr. 247).

On November 2, 2007, Dan Donahue prepared a Psychiatric Review Technique form. (Tr. 252-265). He found that plaintiff had a moderate degree of limitation in activities of daily living, maintaining social functioning, maintaining concentration, persistence, or pace, and had one or two episodes of decompensation, each of extended duration. (Tr. 262). He noted that Plaintiff was currently taking psychiatric medications and it appeared that they were benefitting her. (Tr. 264). He believed that at that point in time, Plaintiff appeared capable of semiskilled type of work. (Tr. 264). In a November 2, 2007 Mental RFC Assessment, Dr. Donahue found Plaintiff was not significantly limited in 11 of 20 categories and moderately limited in 9 of 20 categories. (Tr. 268). Dr. Donahue concluded that Plaintiff was able to perform work where interpersonal contact was routine but superficial, e.g. grocery checker, where tasks were learned by experience, where there were several variables, and limited judgment was required, and where the supervision required was little for routine tasks but detailed for non-routine tasks. (Tr. 268).

Dr. Stagg placed Plaintiff on Interferon treatment for her hepatitis C in September of 2007. She had to be off of her medications for approximately three weeks in October of 2007 when she had sinusitis and oral surgery. She started back on her medication against the advice of Dr. Stagg prior to him evaluating her in the office, which led to her being discontinued from that clinic. (Tr. 362). On January 8, 2008, Dr. Conover referred Plaintiff to another physician (Tr. 347), and after resuming her treatments with Dr. Chad E. Paschall, he noted that blood test results did not show a significant drop on Plaintiff's hepatitis virus level, and he therefore recommended Plaintiff discontinue her Interferon therapy. He opined that Plaintiff just needed

-8-

to wait for future therapies that might be more effective.  He further stated: "Once again, you had a very favorable liver biopsy with no scarring of the liver.  At this point we just need to wait and see what other future therapies come out that may be more effective for you."  (Tr. 361).

On January 22, 2009, Plaintiff's hearing was tested and she was found to have bilateral, moderate to severe sensory neural hearing loss.  (Tr. 429).  It was recommended that she obtain binaural hearing aids.

## III.   Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity.  Pearsall v.

AO72A
(Rev. 8/82)

Massanari, 274 F. 3d 1211, 1217 (8ᵗʰ Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity (RFC). See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8ᵗʰ Cir. 1982); 20 C.F.R. §416.920.

## IV. Discussion:

### A. Whether the ALJ failed to fully develop the record

Plaintiff alleges that the ALJ failed to develop the record because she did not give proper analysis regarding Plaintiff's limitations as a result of her chronic hepatitis C. The ALJ has a duty to fully and fairly develop the record. See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir. 1995); Freeman v. Apfel, 208 F.3d 687, 692 (8th Cir. 2000). This can be done by re-contacting

-10-

medical sources and by ordering additional consultative examinations, if necessary.  See 20 C.F.R. § 404.1512.  The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press his case.  Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). However, the ALJ is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record.  See Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995)("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial").

With respect to Plaintiff's alleged chronic fatigue as a result of her hepatitis C, the record does not indicate that it is disabling, and as will be more fully discussed below, her daily activities belie the fact that her fatigue is disabling.  As the Eighth Circuit held in Blakeman v. Astrue, 509 F.3d 878, 882 (8th Cir. 2007), "[m]any workers suffer from fatigue but are able to work, just as many people suffer from chronic pain that is not disabling."  The issue is not whether Plaintiff's hepatitis C  is fatiguing, it is whether her fatigue is disabling.  See id.  The ALJ found that Plaintiff could perform light work with limitations, and Plaintiff did not assign any limitation to her ability to sit.  Instead, although she testified that she would not be able to sit in a chair at an office for eight hours and answer the phone, Plaintiff stated that this was due to her anxiety and depression, which are well-controlled with her medication, and not because she could not sit for that period of time.  (Tr. 32)

Plaintiff also argues that the ALJ failed to address the effect the recurrent open lesions on her face, neck and arms would have on her ability to work.  Plaintiff's PCT was treated by Dr. Ubben with phlebotomies, and on August 7, 2007, Dr. Ubben found that no further phlebotomy treatments were necessary because her iron stores had depleted down to a desirable level.  In addition, Plaintiff's PCT was subsequently reported as "stable"and on January 23,

-11-

2008, it was reported that Plaintiff had "no active porphyria cutanea lesions." (Tr. 363). In a letter dated August 15, 2007 from Dr. Ubben, the only limitation he placed on Plaintiff was that she should not be exposed to sunlight or toxic chemicals, and beyond that "I have no work restrictions related to her cutaneous findings." In the instant case, the ALJ clearly included these limitations in his RFC findings.

Plaintiff next argues that the ALJ failed to state that Plaintiff's depression was severe and did not develop the record regarding Plaintiff's depression and ADHD. On more than one occasion, the medical records and Plaintiff's own reports indicated that her anxiety and depression were under control with Lexapro. With respect to her ADHD, when she was on Adderall, it appeared to help her greatly, but she decided she did not want to be on it any more. Plaintiff's failure to take prescription medication for ADHD contradicts her allegations that her ADHD is disabling. In his Mental RFC Assessment, Dr. Donahue found that Plaintiff appeared to be benefitting from her medications and was not pursuing a more aggressive form of treatment for her mood disorder. In the August 6, 2007 BDI-II questionnaire, the only category marked by Plaintiff was the one that indicated she did not enjoy things as much as she used to. Also in August of 2007, while on Lexapro, Plaintiff was reported as having no depression or anxiety, and in April of 2007, her depression and anxiety were noted to be either stable or controlled.

Dr. Jean Curtis found that: Plaintiff demonstrated and reported the capacity to communicate and interact adequately in a socially adequate, intelligible and effective manner; although she stated she became easily frustrated when attempting to cope with the typical mental/cognitive demands of basic work-like tasks, she appeared to cope adequately on the tasks required in the evaluation, with the exception of Serial 3's, during which she became frustrated;

-12-

although Plaintiff stated she was easily distracted on tasks at home and had difficulty maintaining concentration, she had minimal difficulty with the ability to concentrate on the evaluation, only on Serial 3's;  although she stated that with work like tasks at home, she had difficulty remaining persistent, she was persistent during the evaluation; and Plaintiff stated that completing work-like tasks within an acceptable time frame was difficult, and she responded on the evaluation with a pressured pace, and based on reported symptoms, was assessed to have difficulty with timely completion of tasks.  Dr. Curtis found that Plaintiff gave adequate effort and was cooperative during the evaluation and that her symptom allegations were congruent with her overt presentation, and there was no evidence of approximate answers to atypical symptoms. In a "Review of Systems" form dated January 23, 2008, Plaintiff indicated that she was generally satisfied with her life and that she did not feel severely depressed.  (Tr. 370).

Finally, Plaintiff was able to work full-time with her ADHD and depression until December 2005, the alleged onset date, when she then continued to work part-time for her husband's company, doing office work.

The Court believes there is substantial evidence to support the ALJ's finding that Plaintiff's mental limitations were not disabling, and the ALJ properly accounted for them when she limited Plaintiff to work that required no more than routine but superficial interpersonal interaction.

Plaintiff alleges that the ALJ failed to account for her hearing impairment.  However, at the administrative hearing, Plaintiff testified that she could hear while talking on the telephone if the volume was up, and Plaintiff was capable of hearing her attorney and the ALJ throughout the hearing.  She also has a cell phone and could hear when an individual called on the phone,

-13-

if they spoke loud enough.  Furthermore, the ALJ's RFC assessment indicated that Plaintiff could not perform work requiring telephone usage.  He therefore took Plaintiff's hearing impairment into account, and the Court believes there is sufficient evidence to support the ALJ's determination that Plaintiff's hearing impairment was not disabling.

Based upon the foregoing, the Court believes the ALJ fully and fairly developed the record.

**B. Subjective Complaints and Credibility Analysis:**

In assessing Plaintiff's subjective complaints, the ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions.  See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole.  Id.  As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide."  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

In the present case, the ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not credible to the extent they were inconsistent with the RFC assessment. Plaintiff reported in July of 2007 that she was tired, moody, depressed, anxious, her hand hurt, and that she had heavy pain on her right side.  However, at that time, the only medications she was taking was Lexapro for her depression.  In

-14-

a July of 2007 Function report, Plaintiff stated that her daily activities consisted of getting up and taking her medicine, unloading the dishes, making her bed, eating breakfast, doing the laundry, napping after lunch, cooking supper, taking another nap, taking a bath and going to bed.  She stated that she took care of her husband, grandmother, and children.  She said that she had no problem with personal care, went outside in the late evening, shopped for groceries and clothes, and was able to manage money.  She said she spent time with her husband and children and watched television and swam in the evenings.  She reported that she could walk one block before needing to stop and rest, and could pay attention for about 15 seconds.  She said she followed written instructions well but not spoken ones.

In a disability report dated July 13, 2007, Plaintiff stated that she had depression and anxiety all her life, did not sleep well and was fatigued daily.  She began self-employment, taking care of her grandmother, because she had problems getting along with employers and co-workers.  In another disability report dated January 23, 2008, Plaintiff stated that her depression, anxiety, and irritability had become worse and that she was extremely fatigued.  At that time, she was taking still taking Interferon for her hepatitis C.  She reported that her severe fatigue made her unable to do most of the simple household tasks and the depression was worse.

At the hearing, Plaintiff stated that she previously worked as an office manager for her husband's electric company and that she answered the phone and wrote the bills.  She stated that she stopped taking care of her grandmother because she could not lift her any more.  She reported that since she stopped taking the Interferon, she was still extremely tired.  She testified that she could not get out of bed on average about two to three days a week - she would stay in bed, in her pajamas, and watch television, and her husband and children stayed away from her.

-15-

She stated that she could still lift her grandson, who weighed about 20 pounds.

The ALJ gave significant weight to the opinions of Plaintiff's treating physicians and State agency consultants, which indicate that Plaintiff has no significant limitation in her ability to sustain work activities on a regular and continuing basis. In his Physical RFC Assessment, Dr. Hicks found Plaintiff capable of doing light work, with the limitation that she must avoid even moderate exposure to extreme heat, fumes, odors, dusts, gases, poor ventilation, and should avoid sunlight and toxic chemicals. None of Plaintiff's treating physicians placed any limitations on Plaintiff's ability to work, other than Dr. Ubben, and the ALJ included Dr. Ubben's limitations in his RFC assessment (must avoid toxic fumes and chemicals and exposure to sunlight). After considering all of the factors required, the ALJ found that the RFC assessment was consistent with and supported by the objective evidence of record and the observations of the treating and examining sources, and found that Plaintiff could perform basic work activities at the RFC he outlined. The Court finds that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

## V.    Conclusion:

Based on the foregoing, the Court affirms the ALJ's decision and dismisses the Plaintiff's case with prejudice.

IT IS SO ORDERED this 2nd day of March, 2011.


/s/ *Erin L. Setser*
 HON. ERIN L. SETSER
 UNITED STATES MAGISTRATE JUDGE

-16-